# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN STANISLAW, on behalf of himself and all others similarly situated, ) ) ) Plaintiffs, ) v. ) ) ERIE INDEMNITY COMPANY, ) ) Defendant. ) ) ) | C.A. No. 07-1078 Erie District Judge McLaughlin |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Cross Motions for Summary Judgment. This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367(a). For the reasons which follow, both motions will be denied.

## I. PROCEDURAL HISTORY

On August 2, 2007, Plaintiff John Stanislaw filed the instant action against Defendant Erie Indemnity Company ("Erie Indemnity") on behalf of himself and similarly situated employees alleging, *inter alia*, that Defendant had violated the Fair Labor Standards Act of 1938 ("FLSA"). Stanislaw filed an Amended Complaint on October 10, 2007 and a Second Amended Complaint on December 17, 2007. Following Defendant's successful motion to dismiss several counts of the Second Amended Complaint, Plaintiff filed a Third Amended Complaint on July 8, 2008 raising allegations under the FLSA of willful failure to pay overtime (Count I) and retaliation (Count II).

1

On September 17, 2009, this Court granted an Amended Motion for Conditional Class Certification of the following proposed class:

> Material Damage Adjusters I and Material Damage Adjusters II at the Murrysville Branch of Erie Indemnity Company who, since three years prior to the date of the Order Granting Conditional Class Certification [date to be inserted] and through the date of this Court's Order Granting Conditional Class Certification [date to be inserted], have been denied overtime pay at the rate of time-and-one-half their regular rates of pay for hours worked in excess of 40 hours per week as a result of a policy and practice by management of knowingly failing to record or pay hours worked by the Material Damage Adjusters I and Material Damage Adjusters II outside the office.

Following court-approved notice to the proposed class, three additional plaintiffs – Michael J. Gelles ("Gelles"), Charles Kirkpatrick[1] ("Kirkpatrick"), and William A. Weigle ("Weigle") – opted-in to the conditional class, each asserting "a claim for unpaid overtime hours worked in excess of 40 hours per week as a result of an alleged policy and practice by management of Erie Indemnity Company of knowingly failing to record or pay hours worked by Material Damage Adjusters I and Material Damage Adjusters II outside the office."

On March 31, 2011, Stanislaw voluntarily withdrew his retaliation claim (Count II). As a result, the only claim remaining before the Court is the overtime claim set forth in Count I of the Third Amended Complaint:

---

[1] Kirkpatrick had previously filed a related lawsuit asserting the same allegations at Kirkpatrick v. Erie Indemnity Company, Civil Action No. 09-119 Erie. The arguments by Plaintiffs and the Defendant in the present action, as well as the record, are identical to those advanced in the summary judgment motions filed in Kirkpatrick. Consequently, my disposition of the motions in the present case necessarily controls the disposition of the motions in Kirkpatrick.

> Count I (FLSA – Overtime) seeking compensation for alleged overtime hours worked in excess of 40 hours per week while employed as Material Damage Adjusters assigned to the Erie Indemnity Company Murrysville, Pennsylvania Claims Office.

Both parties have moved for summary judgment on a variety of grounds. Following extensive briefing and an oral argument held on December 8, 2011, this matter is ripe for review.

## II.  FACTUAL HISTORY

Plaintiffs Stanislaw, Kirkpatrick, Gelles and Weigle are each current or former employees of Defendant Erie Indemnity, a Pennsylvania corporation engaged in business services related to the automobile insurance industry. (Mahon Affidavit, ¶ 2; Stanislaw Depo., pp. 13-14; Kirkpatrick Depo., 12/17/10, p. 18; Gelles Depo., 4/15/11, pp. 11-12; Weigle Depo., p. 23). Erie Indemnity conducts business in eleven states and employs approximately 4,400 employees across its various locations, including a Home Office and 24 Branches and Claim Offices. (Mahon Affidavit, ¶ 2).

Each of the Plaintiffs is or was employed by Erie Indemnity as a Material Damage Adjuster I or Material Damage Adjuster II at the company's Murrysville Claims Office, located in Murrysville, Pennsylvania. (Mahon Affidavit, ¶ 2; Stanislaw Depo., pp. 13-14; Kirkpatrick Depo., 12/17/10, pp. 19-20; Gelles Depo., 4/15/11, p. 12; Weigle Depo., p. 24). Material Damage Adjusters are employed to appraise and settle claims related to physical damage to all types of motor vehicles including automobiles, trucks, motorcycles and recreational vehicles. (Weigle Depo., pp. 28-29). Material Claims Adjusters typically work from remote locations, rather than reporting to the Murrysville office location on a daily basis, and receive and complete their assignments by way of computer. (Stanislaw Depo., pp. 17-18; Kirkpatrick Depo., 12/17/10, pp. 25-26; Gelles Depo., 4/15/11, p. 25; Weigle Depo., p. 40).

3

Prior to 2004, Material Claims Adjustors were salaried employees who were classified as exempt under the FLSA.  On March 18, 2004, Erie Indemnity reclassified its Material Claims Adjusters – including Stanislaw, Kirkpatrick, Gelles and Weigle – as nonexempt employees, requiring them to track and record their work hours and entitling them to "overtime for hours worked in excess of 37.5 in a pay period."  (Nesselhauf Affidavit, ¶ 7, 9; Exhibits A-D).  Because of their status as remote employees who primarily work out of their own homes, Material Claims Adjusters were responsible for utilizing Erie Indemnity's proprietary time and attendance system, known as ERIEtime, to record and submit their own work hours and absences.   (Nesselhauf Affidavit, ¶ 3).

Erie Indemnity's overtime policy generally requires employees to receive pre-approval from a supervisor before working overtime.  (Nesselhauf Affidavit, ¶¶ 7, 9).  Following their conversion to the new time reporting system, it is undisputed that each of the Plaintiffs occasionally submitted and received compensation for overtime hours worked.  (Nesselhauf Affidavit, ¶¶ 13-16).  However, Plaintiffs contend that claims adjustors working in the Murrysville office were required to work substantial additional overtime hours for which they were not paid.

### III.  STANDARD FOR REVIEW

Federal Rule of Civil Procedure 56(c)(2) provides that summary judgment shall be granted if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided in this rule – set out specific facts showing a

genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party."

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed. R. Civ. P. 56(c); Krouse v. American Sterilizer Company, 126 F.3d 494, 500 n.2 (3rd Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3rd Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact 'to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3rd Cir. 1990) (quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990)).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Company v. Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3rd Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegations or suspicions." Firemen's Ins. Company of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3rd Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

## IV. ANALYSIS

The FLSA generally provides that an employer may not employee his employee for a workweek longer than forty hours unless his employee receives overtime compensation at a rate not less than one and a half times his regular rate. 29 U.S.C. § 207(a)(1). In order to prevail on an FLSA claim for unpaid overtime, an employee must prove that they "were suffered or permitted to work without compensation." Allen v. Board of Public Education for Bibb County, 495 F.3d 1306, 1314 (11th Cir. 2007) (citing 29 U.S.C. § 201 *et seq.*). Courts have interpreted this to mean that an FLSA plaintiff must demonstrate that "(1) he or she worked overtime without compensation and (2) the [employer] knew or should have known of the overtime work." Id. at 1314-15 (citing Reich v. Dep't of Conservation and Nat. Res., 28 F.3d 1076, 1082 (11th Cir. 1994)); see also 29 C.F.R. § 185.11 (interpreting the "suffer or permit to work" requirement to mean that an employer violates the FLSA when it "knows or has reason to believe that [an employee] is continuing to work and the time is working time.").

"Where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents the

employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of the FLSA." Guenzel v. Mount Olive Bd. of Educ., 2011 WL 5599717, *3 (D.N.J. 2011) (quoting Forrester v. Roth's I.G.A. Foodliner, Inc., 646 F.2d 413, 414 (9th Cir.1981)); see also 29 U.S.C. § 203(g).  In other words, "[t]here is no violation of the FLSA where the employee performs uncompensated work but deliberately prevents his or her employer from learning of it." Allen, 495 F.3d at 1319 (citing Forrester, 646 F.2d at 414).  However, "[a]n employer who is armed with this knowledge cannot stand idly by and allow an employee to perform overtime work without proper compensation, even if the employee does not make a claim for the overtime compensation." Guenzel, 2011 WL 5599717 at *3 (quoting Forrester, 646 F.2d at 414).  Constructive knowledge can be imputed to the employer when "it has reason to believe that its employee is working beyond his shift."  29 C.F.R. § 785.11. Moreover, "when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." Allen, 495 F.3d at 1319 (citing Brennan v. Gen. Motors Acceptance Corp., 482 F.2d 825, 828 (5th Cir. 1973)).

In its motion for summary judgment, Defendant primarily contends that Plaintiffs have failed to establish that Erie Indemnity had actual or constructive knowledge of the allegedly unpaid overtime hours.  Defendant also contends that the Plaintiffs should be estopped from asserting that Erie Indemnity had such knowledge because of their own purposeful failure to correctly report their hours.  Defendant cites several circuit court decisions which have held that an employee who is responsible for accurately maintaining and submitting his or her own timesheets and fails to report all of their overtime to their employer is generally precluded from bringing an FLSA claim for the unreported overtime.  In Wood v. Mid-Am. Mgmt. Corp., for example, the plaintiff was employed in a maintenance position at a large apartment complex that required

7

significant overtime. Wood, 192 Fed. Appx. 378, 379 (6th Cir. 2006). Because his work functions were performed throughout the complex, rather than from a central location, Wood was responsible for completing and signing his own time cards and submitting them to management. Id. Wood was paid for all of the overtime hours that he reported, but nonetheless brought an action against his employer contending that "he did not report all of the overtime he worked and accordingly . . . Mid-America must pay him for this additional time as well." Id. at 380. The district court granted summary judgment in favor of the employer after determining that Wood had failed to demonstrate that his employer should have been aware of the additional overtime hours that he was claiming. Id. On appeal, the Sixth Circuit agreed:

> Because Wood did report some overtime . . . Mid-America had no reason to suspect that he neglected to report other overtime hours.
> \* \* \* \* \* \*
> At the end of the day, an employee must show that the employer knew or should have known that he was working overtime or, better yet, he should report the overtime hours himself. Either way, the employee bears some responsibility for the proper implementation of the FLSA's overtime provisions. An employer cannot satisfy an obligation that it has no reason to think exists. And an employee cannot undermine his employer's efforts to comply with the FLSA by consciously omitting overtime hours for which he knew he could be paid.

Id. at 380-81.

In Forrester v. Roth's I.G.A. Foodliner, Inc., the Ninth Circuit similarly rejected an employee's claim that his employer was obligated to pay him for overtime hours that he had failed to report. Forrester, 646 F.2d 413, 414 (9th Cir. 1981). In Forrester, as in Wood, the plaintiff was responsible for accurately submitting his own time sheets to his employer. Id. Forrester did not dispute that he had, in the past, reported and

8

received pay for approximately eight hours of overtime per week.  Id.  However, he contended that he was entitled to be paid for an additional ten hours of overtime per week that he had never reported.  Id.  The Court disagreed:

> An employer who is armed with [knowledge of unreported overtime] cannot stand idly by and allow an employee to perform overtime work without compensation, even if the employee does not make a claim for the overtime compensation.  However, where an employer has no knowledge that an employee is engaging in overtime work and that employee fails to notify the employer or deliberately prevents his employer from acquiring knowledge of the overtime work, the employer's failure to pay for the overtime hours is not a violation of s 207.
>
> \* \* \* \* \* \*
>
> Forrester deliberately omitted the inclusion of those hours from his time sheet even though he admittedly knew that he would have been paid for those hours.
>
> An employer must have an opportunity to comply with the provisions of the FLSA.  This is not to say that an employer can escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation.  However, where the acts of an employee prevent an employer from acquiring knowledge, here of alleged uncompensated overtime hours, the employer cannot be said to have suffered or permitted the employee to work in violation of s 207(a).

Id. at 414-15.

Defendant also relies on Newton v. City of Henderson, 47 F.3d 746, 749-50 (5th Cir. 1995), wherein the plaintiff, a police officer assigned to a drug task force, was required by department procedures to accurately record and report his own hours to his employer.  Id. at 747-48.  The plaintiff acknowledged that he was paid for all of the overtime hours that he reported, but, following his resignation, he filed suit seeking unpaid overtime that he allegedly worked but had never reported.  Id.  Affirming the district court's grant of summary judgment in favor of the employer, the Fifth Circuit

9

determined that the plaintiff had failed to produce sufficient evidence that his employer knew or should have known of the unpaid hours. Id. at 749. Rather, the Court held that "it was reasonable for [his supervisor's] to rely on Newton's payroll submissions as a reliable indicator of the number of hours being worked by Newton." Id. at 749-50.

It is undisputed that, as in Wood, Forrester and Newton, the Plaintiffs in this case were remote employees who were required to accurately maintain and submit their own time records in accordance with procedures established by Defendant. As in each of those cases, Plaintiffs are now seeking to be paid for overtime hours that they do not dispute were never reported to their employers in the first instance. Consequently, Defendant contends that Plaintiffs should be similarly barred from proceeding with their FLSA claims because they cannot demonstrate that Defendant had any knowledge, actual or constructive, of the unreported hours.

Unlike in each of the cases cited above, however, Plaintiffs have presented evidence in the instant case to suggest that Defendants attempted to discourage or squelch accurate overtime reporting. For instance, Stanislaw testified that his direct supervisor, Dan Wyzkiewicz, would occasionally complain that Stanislaw was "doing him on overtime," and that Stanislaw and Wyzkiewicz had engaged in several "heated discussions" about Stanislaw's attempts to submit all of the overtime hours that he had worked. (Stanislaw Depo., pp. 83-84, 86). Stanislaw testified that, on one occasion, Wyzkiewicz indicated that he wouldn't pay Stanislaw for overtime that he had worked and told him to "quit claiming overtime." (Stanislaw Depo., pp. 87-88). Stanislaw testified that "if I worked 10 hours of overtime, they give me one or two hours" and that "you had to beg to get paid." (Stanislaw Depo., pp. 87-88). Stanislaw described one

instance where his supervisor, Wyzkiewicz, overrode his time card and allegedly changed it to eliminate two hours of overtime that Stanislaw had worked on a holiday. (Stanislaw Depo., pp. 89-91). He also testified that Wyzkiewicz, on multiple occasions, had instructed Stanislaw to record and report his time as a 7.5 hour day beginning at 8:00 A.M., irrespective of the actual hours worked. (Stanislaw Depo., pp. 139-140). When Stanislaw complained about not being able to report his overtime, he was told by Wyzkiewicz and fellow supervisors Douglas Knight and Jim Dawson that "there [are] other jobs out there." (Stanislaw Depo., p. 139-40).

Charles Kirkpatrick testified in his deposition that, when Erie Indemnity first implemented the new overtime system, Murrysville Office Manager Bill Stevens warned the Material Damage Adjusters that "they didn't expect overtime to be an issue, they didn't expect overtime to be submitted." (Kirkpatrick Depo., pp. 30-31). Stevens allegedly indicated that management felt that the adjustors were "compensated well for what [they] do" already and that "[t]here are many people out there wanting your job, and we don't expect overtime to be an issue." (Kirkpatrick Depo., p. 31). Stanislaw, in his deposition, described that meeting similarly. (Stanislaw Depo., pp. 69-70). Kirkpatrick also testified that Stevens instructed the adjustors "to put 7.5 [hours] in no matter what" rather than accurately recording their time. (Kirkpatrick Depo., p. 31).

Kirkpatrick indicated that when he attempted to submit all of the overtime that he worked to management, his supervisor, Wyzkiewicz, would say "You ain't doing me; are you?" Kirkpatrick interpreted this to mean that he shouldn't submit all of his overtime. (Kirkpatrick Depo., pp. 44-45). Kirkpatrick also alleges that Wyzkiewicz would occasionally refuse to allow Kirkpatrick to submit overtime that he had worked.

11

(Kirkpatrick Depo., pp. 45-46). Kirkpatrick described an incident in which it took him "three months" to get paid for overtime hours that he had submitted. (Kirkpatrick Depo., pp. 51-52).

Gelles testified that he didn't record all of his overtime hours because he "felt the company didn't want [him] to . . . enter all the time into the system." (Gelles Depo., 4/15/2011, p. 116). Gelles based this understanding on several incidents where his supervisor refused his requests for overtime despite that Gelles could not complete his tasks without working extra hours. (Gelles Depo., pp. 116-117). Gelles testified that another supervisor, Doug Knight, instructed him that, rather than submit overtime, he should carry over any extra hours (beyond 7.5) that he worked on one day to the next day and take some time off so as to maintain the 7.5 hour workday. (Gelles Depo., pp. 118-19). However, the reality of the job was that Gelles would continue to receive assignments during the hours that he was supposed to be taking off on the following day and would have no choice but to work the hours without submitting the overtime. (Gelles depo., p. 119).

Weigle also testified that his supervisor, Knight, would instruct him to modify his time sheets to reflect a 7.5 hour workday and a 37.5 hour work week, even if Knight had actually worked different hours than that. (Weigle Depo., pp. 65-67, 74, 78-79). Knight instructed Weigle that if he worked more than 7.5 hours on a particular day, he should carry over those hours on his time sheet to any other days where he might have worked less than 7.5 hours, rather than submit the actual hours worked. (Weigle Depo., p. 67). Weigle responded to these instructions by occasionally modifying his time sheet to eliminate the overtime that he had worked and arrive at a 37.5 hour work

week. (Weigle Depo., p. 74). Weigle later approached his branch manager, Linda Kuhl, to ask whether carrying over hours, as instructed by Knight, was appropriate. Kuhl informed him that carrying time over was not appropriate and that he should report his actual time. (Weigle Depo., pp. 78-81). However, Weigle continued reporting his time as instructed by Knight because he did not want to "create waves" with his immediate supervisor. (Weigle Depo., p. 81). Weigle also testified that Knight would review Weigle's claims volume and instruct him not to enter overtime on any weeks where claims volume appeared to be low, despite that Weigle had actually worked overtime hours. (Weigle Depo., pp. 193-94).

Courts have consistently held that a company "cannot disclaim knowledge" of untruthful overtime reports "when certain segments of its management squelched truthful responses." Brennan v. General Motors Acceptance Corp., 482 F.2d 825, 828 (5th Cir. 1973). In Brennan, for example, the Fifth Circuit affirmed a judgment in favor of a class of employees who alleged that they were entitled to unpaid and unreported overtime hours because their supervisors had actively discouraged accurate overtime reporting. As in Wood, Forrester and Newton, the plaintiffs in Brennan were remote workers who maintained and submitted their own time sheets and who performed their work without direct supervision from management. Id. at 827. At trial, the trial court determined that, "despite efforts of upper echelon management to encourage accurate overtime reporting, the employees nevertheless understated their overtime because of pressure brought to bear by their immediate supervisors." Id. This pressure included "insist[ing] that reported overtime hours be kept to a stated minimum level" and "that all work be completed within certain defined time limits." Id. The trial court concluded,

13

and the Fifth Circuit agreed, that this type of pressure to underreport hours amounted to constructive knowledge on the part of the employer:

> GMAC's principal argument is that it cannot have violated the FLSA because it had no knowledge of the unreported overtime. The company relied on its employees to report fully all the hours worked. In fact the record contains a series of memoranda and instructions promulgated by upper management to encourage full reporting of all hours worked by employees. If the employees are not paid for all overtime hours worked it is because they have voluntarily failed to report those hours to the company. While it may be true that the company has had no actual knowledge of the unreported overtime hours, we believe the company had constructive knowledge.
>
> \*   \*   \*   \*   \*   \*
>
> Indeed, GMAC's upper management regularly encouraged the full reporting of overtime and sought to learn of all overtime worked, but the trial court found that the employees' immediate supervisors insisted that all work be completed within certain defined time limits and that "the pervasive effect of such instructions from defendant's supervisors to its employees was that an employee was limited in the number of hours he could turn in for payroll purposes irrespective of the number of hours actually worked. The defendant's district representatives, field representatives and certain of the side telephone collection men regularly worked in excess of forty hours per week but with rare exception, were only allowed to turn in, record, and be paid for forty to forty-two hours." Because the immediate supervisors were primarily responsible for the employees' failing to report all overtime, we believe they may have had actual knowledge of the unreported overtime. *At the very least they had constructive knowledge, for they had the opportunity to get truthful overtime reports but opted to encourage artificially low reporting instead. The company cannot disclaim knowledge when certain segments of its management squelched truthful responses.*

Id. at 827-28 (emphasis added).

The Eleventh Circuit reached the same conclusion in Allen v. Board of Public Education for Bibb County, 495 F.3d 1306 (11th Cir. 2007), a case concerning allegations of unpaid overtime made by bus drivers, bus monitors, and various support

14

staff employed by the defendant. In Allen, the school board, relying heavily on Newton, 47 F.3d at 746, argued that it was entitled to summary judgment because plaintiffs had failed to accurately self-report their hours worked and, therefore, could not demonstrate that the board was aware of any unreported overtime. Id. at 1317. Despite the plaintiffs' testimony that "they were told not to record their overtime hours because the Board would not pay them overtime" and were occasionally "made to take back their actual time sheets and resubmit new time sheets that reflected their scheduled, not actual, hours," the district court granted summary judgment in favor of the school board, concluding that plaintiffs had failed to provide evidence of actual or constructive knowledge on the part of the school board. Id. at 1316. On appeal, the Eleventh Circuit partially reversed, holding that "when an employer's actions squelch truthful reports of overtime worked, or where the employer encourages artificially low reporting, it cannot disclaim knowledge." Id. at 1319 (citing Brennan, 482 F.2d at 828). The Court stated:

> It is not insignificant that Plaintiffs' inability to state the hours they worked may be at least partly the fault of the Board; after all, several Plaintiffs have testified that when they submitted time sheets to the Board that showed overtime work, those time sheets were destroyed. Because the Board seems to bear at least partial responsibility for the lack of documentation, we must reject its assertion that Newton v. City of Henderson, 47 F.3d 746 (5th Cir.1995), supports summary judgment here. In Newton, the court found no violation of the FLSA because Plaintiff failed to record his overtime work on his time sheets. Id. at 750. *Yet, unlike the plaintiff in Newton, several Plaintiffs in this case testified that they were discouraged from accurately recording overtime work on their time sheets, and were encouraged to falsify their own records by submitting time sheets that reflected their scheduled, rather than actual, hours. It can be inferred that these Plaintiffs would have reported their overtime if they had not been discouraged from doing so.*

15

Id. at 1317 (emphasis added). The Court concluded that summary judgment was inappropriate as to those plaintiffs who had testified that they had been discouraged from filing accurate time sheets. Id. at 1317-20. See also Monroe v. FTS USA, 763 F.Supp.2d 979, 993 (W.D. Tenn. 2011) (concluding that summary judgment against plaintiffs who intentionally failed to report overtime hours was not appropriate because of evidence that employees had been told by supervisors not to report all of their hours and had been threatened with termination if they continued to report overtime).

Indeed, Wood, Newton and Forrester, the cases relied upon by Defendant, also explicitly recognized that a different outcome might be warranted if there was evidence that an employer had actively discouraged accurate time reporting. In Wood, as discussed above, the Court concluded that the plaintiff could not recover for unpaid overtime that he had failed to accurately report to his employer. Wood, 192 Fed. Appx. at 381. However, the Court specifically noted that Wood's employer had never discouraged him from reporting all of his overtime:

> Wood does claim that he once told his supervisor that he was not reporting all of his overtime hours, but he also admits that in response she told him "that [he] needed to report all of [his] overtime hours; that [he] couldn't get paid for them if they weren't written down, or reported." JA 72-73; see also JA 75-76 (When Wood told his boss that he "worked more hours that [he] didn't write down," she instructed him to "tell us about them, report them."); JA 78 ("Q: But [your boss], or anybody else from Mid-America, never told you don't turn in those hours, you're not going to get paid for them? A: No, she told me to get in for what I worked."); see also JA 75 (noting that his boss never "disapprove[d] any hours" that he reported).

Id. Similarly, in Newton, the Court implied that a different result might have been reached had there been evidence that the employer had discouraged plaintiff from accurately reporting his hours:

> Newton's payroll forms would not be reliable indicators of the number of hours worked, if there was evidence to support the conclusion that the City encouraged or forced Newton to submit incorrect time sheets. The district court noted that in Brumbelow this court stressed that there was no evidence that the company *in any manner* encouraged workers to falsely report their hours. The district court could be read to imply that there was such evidence in this case. The court went on to reiterate that Chief Freeman should have known that Newton was required to work overtime by the DEA. Again, the facts upon which the district court relied in imputing constructive knowledge to Chief Freeman do not support a finding that the employer in this case encouraged Newton to falsely report his hours. We find no basis for such a finding in the record before us.

Id. at 750 (emphasis in original) (citing Brumbelow v Quality Mills, Inc., 462 F.2d 1324, 1327 (5th Cir. 1972)); See also Forrester, 646 F.2d at 414-15 (noting that an employer cannot "escape responsibility by negligently maintaining records required by the FLSA, or by deliberately turning its back on a situation.").

In light of the foregoing, I conclude that Plaintiffs have produced sufficient evidence to create a triable issue of material fact as to whether Defendant had actual or constructive knowledge that Plaintiffs were working overtime without compensation. Defendant's motion for summary judgment as to Plaintiffs' FLSA unpaid overtime claim is therefore denied. Conversely, Defendant has supplied deposition testimony from Plaintiffs' managers and supervisors denying that they ever instructed Material Damage Adjusters not to report all of their overtime and denying that they modified or altered time records to eliminate overtime. See, e.g., Wyckiewicz Depo., pp. 14-16, 31-32,

49-50; Knight Depo., pp. 11, 14-15, 16, 22; Stevens Depo., pp. 16-17, 19; Dawson Depo., pp. 18-19. Consequently, Plaintiffs' motion for summary judgment must also be denied. Resolution of this matter is appropriately left in the hands of a jury.

Defendant alternatively contends that, even if summary judgment is not granted with respect to all of Plaintiffs' claims, the Court should grant summary judgment as to any claim that Defendant committed a "willful violation" of the FLSA. 29 U.S.C. § 255(a) of the FLSA imposes a two-year statute of limitations on allegations of unpaid overtime unless the violations alleged are "willful," in which case a three-year period applies. 29 U.S.C. § 255(a). Violations are willful where the employer "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." McLaughlin v. Richland Shoe Co., 486 U.S. 128, 133 (1988). Courts have consistently concluded that a violation is willful where an employer intentionally discourages or inhibits employees from accurately reporting overtime. See, e.g., Kuebel v. Black & Decker, Inc., 643 F.3d 352, 365-66 (2nd Cir. 2011) (holding that "the question of willfulness for FLSA statute of limitations purposes is properly left to trial" where evidence suggested that managers had instructed employees to work as much as necessary to finish their jobs but not to report any overtime); Smith v. Micron Electronics, Inc., 2005 WL 5328543, *3 (D. Idaho 2005) (denying summary judgment as to willfulness where evidence was in conflict concerning whether the employer had told employees to work off the clock rather than authorize overtime); Lopez v. Children's Memorial Hosp., 2002 WL 31898188, *6 (N.D. Ill. 2002) (denying summary judgment as to willfulness where plaintiff presented evidence that she was "discouraged" from working overtime and told not to let her employers know if she worked any overtime).

As such, the same evidence that precludes summary judgment as to Plaintiffs' FLSA claim also precludes summary judgment as to the issue of willfulness.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JOHN STANISLAW, on behalf of himself and all others similarly situated,<br><br>            Plaintiffs,<br>   v.<br><br>ERIE INDEMNITY COMPANY,<br><br>            Defendant. | C.A. No. 07-1078 Erie<br>District Judge McLaughlin |

## ORDER

AND NOW, this 15th day of February, 2012, and for the reasons set forth in the accompanying Memorandum Opinion,

IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment is DENIED. Plaintiff's Motion for Summary Judgment is also DENIED.

                                            /s/ Sean J. McLaughlin
                                            United States District Judge

cm: All parties of record. ___